UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

J&J SPORTS PRODUCTIONS, INC.,           ) Case No: 2:12-cv-01519-RCJ-CWH
                                        )
            Plaintiff,                  ) **ORDER**
                                        )
      v.                                )
                                        )
                                        )
BONITO MICHOACAN, INC.,                 )
                                        )
            Defendant.                  )
                                        )

Currently before the Court is Plaintiff J&J Sports Productions, Inc.'s Motion for Entry of Default Judgment Against Defendant Bonito Michoacan, Inc. Pursuant to Fed. R. Civ. P. 55(b)(2) (#18). Plaintiff has also moved for attorney's fees and costs incurred, as well as statutory, compensatory, punitive and exemplary damages. (Amend. Compl. (#11) at 5-8).

## BACKGROUND

On August 27, 2012, Plaintiff J&J Sports Productions, Inc. filed a complaint in this Court based on federal question jurisdiction against Defendant Bonito Michoacan, Inc. (Compl. (#1) at 1). On October 3, 2012, Defendant filed an answer. (Answer (#6)). On November 20, 2012, the parties filed a joint stipulation to permit Plaintiff to amend its complaint to include an additional cause of action and to allow Defendant 20 days from the entry of the Court's order to respond. (Stip. to Amend (#9)). Judge Carl W. Hoffman granted the stipulation and Plaintiff filed the amended complaint on November 26, 2012. (Order on Stip. (#10); Am. Compl. (#11)).

Plaintiff's amended complaint alleged that Plaintiff had the exclusive national commercial distribution (closed-circuit) rights to telecast nationwide "200: Celebrate and Dominate: Shane Mosley v. Sergio Mora Championship Fight Program" on September 18, 2010, and "Tactical Warfare: Manny Pacquiao v. Antonio Margarito, WBO Light Middleweight Championship Fight Program" on November 13, 2010 (collectively referred to as "*Programs*"). (Am. Compl. (#11) at 4). The amended complaint alleged that Defendant had unlawfully intercepted, received,

published, divulged, displayed, and/or exhibited those programs at the time of their transmission at Defendant's commercial establishment.  (*Id.* at 5).  Further, the amended complaint alleged that Defendant's acts were willful, malicious, egregious, and intentionally designed to harm Plaintiff by causing financial loss.  (*Id.* at 7).  As a result, the amended complaint alleged the following causes of action: (1) violation of 47 U.S.C. §605; (2) violation of 47 U.S.C. §553; and (3) conversion.  (*Id.* at 4-6).  Accordingly, the amended complaint prayed for the following relief: (1) $110,000 for each violation of count I, and attorneys fees and costs; (2) $60,000 for each violation of count II, and attorneys fees and costs; and (3) compensatory damages in an amount according to proof for each violation of count III, exemplary damages, punitive damages, and attorneys fees and costs.  (*Id.* at 7-8).

On January 17, 2013, Plaintiff filed a notice to plead informing both Defendant and Defendant's counsel that they were required to answer or otherwise plead regarding the amended complaint within three days to avoid a default.  (Notice to Plead (#12)).  Defendant did not file a response.  (*See generally* Docket Sheet).  On January 28, 2013, Plaintiff filed a motion for entry of clerk's default on the amended complaint.  (Mot. for Clerk's Default (#13)).  The clerk's office entered default as to Defendant on March 8, 2013.  (Default (#17)).  Plaintiff then filed a motion for default judgment with this Court on April 17, 2013.  (Mot. for Default Judg. (#18)).

On June 27, 2013, Plaintiff filed a proposed default judgment against Defendant.  (Prop. Default Judg. (#19)).  The proposed default judgment recommended that the Court award Plaintiff the following damages: (1) $55,500 for the violation of 47 U.S.C. §605(e)(3)(c)(i)(II); (2) $10,000 for the violation of 47 U.S.C. §605(e)(3)(c)(ii); (3) $4,400 for conversion; and (4) $1,200 for attorney's fees (calculated by four hours at $300 per hour).  (*Id.* at 1-2).  The amount proposed totaled $70,600.  (*Id.* at 2).

## LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Fed. R. Civ. P. 55(b)(2) provides that a court may enter a default judgment after the party seeking default

applies to the clerk of the court as required by subsection (a) of this rule. *See* Fed. R. Civ. P. 55(b)(2); *see also TruSeal Technologies, Inc. v. Beijing Hulali Architecture Decoration Co., Ltd.*, 2:08-CV-1338-JCM-LRL, 2010 WL 5387585, at *1 (D. Nev. Dec. 21, 2010).

## DISCUSSION

On March 8, 2013, the Clerk of the Court entered default against Defendant for Defendant's failure to answer Plaintiff's amended complaint or otherwise defend the instant lawsuit. (Default (#17)). Plaintiff moves this Court for an entry of default judgment against Defendant based on Fed. R. Civ. P. 55(b)(2). (Mot. for Default Judg. (#18)).

**I. Default Judgment**

The choice whether to enter a default judgment lies within the discretion of the district court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Default judgments are usually disfavored because cases should be decided on their merits whenever possible. *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985); *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). In the determination of whether to grant a default judgment, the trial court generally considers the seven factors articulated in *Eitel*. 782 F.2d at 1471-72. These factors are: (1) the possibility of prejudice to the plaintiff, (2) the merits of the claims, (3) the sufficiency of the complaint, (4) the amount of money at stake, (5) the possibility of a dispute concerning material facts, (6) whether default was due to excusable neglect, and (7) the policy favoring a decision on the merits. *Id.* In applying the *Eitel* factors, the factual allegations of the complaint, except those relating to damages, should be taken as true. *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977); *see* Fed. R. Civ. P. 8(d).

The first *Eitel* factor weighs in favor of granting Plaintiff's motion because Plaintiff would be prejudiced by an unfavorable decision. Defendant has not answered or otherwise responded to Plaintiff's amended complaint. (*See generally* Docket Sheet). Due to the likelihood that Defendant will continue to ignore Plaintiff's request, Plaintiff would likely not be allowed to litigate its claims should this Court deny the motion. *See United States v. Twenty-Four Thousand Dollars ($24,000) in United States Currency*, 2:09-CV-2319-LRH-RJJ, 2010 WL 2695637, at *2 (D. Nev. July 2, 2010). In that event, Plaintiff would be "without other recourse

for recovery." *Nevada Prop. 1 LLC v. Newcosmopolitanlasvegas.com*, 2:12-CV-866-JCM-NJK, 2013 WL 167755, at *2 (D. Nev. Jan. 15, 2013).

The second and third *Eitel* factors favor a default judgment if Plaintiff's claims are meritorious and the complaint sufficiently states a claim for relief consistent with the liberal pleading standards of Fed. R. Civ. P. 8. *See* Fed. R. Civ. P. 8; *see also Danning v. Lavine*, 572 F.2d 1386, 1388-89 (9th Cir. 1978). Plaintiff's amended complaint states plausible claims for relief for violations of the Communications Act of 1934, as amended, 47 U.S.C. §605; the Cable & Television Consumer Protection and Competition Act of 1992, as amended, 47 U.S.C. §553; and tortuous conversion of the *Programs* for Defendant's own use and benefit. (*See* Am. Compl. (#11) at 4-7; *see also* Mot. for Default Judg. (#18) at 1). Because the Court assumes that all factual allegations of the complaint are true, this satisfies the second *Eitel* factor. As to the third, Plaintiff's amended complaint is well pleaded as it identifies Defendant, enumerates Plaintiff's exclusive contractual right to *Programs*, describes the steps Defendant took to knowingly intercept *Programs*, and proposes causes of action for Defendant's conduct. (*See* Am. Compl. (#11)).

Under the fourth *Eitel* factor, the Court should consider the amount of money at stake in relation to the seriousness of Defendant's conduct. *Newcosmopolitanlasvegas.com*, at *2. The sum of money Plaintiff seeks in its amended complaint is relatively large, exceeding $170,000. (Am. Compl. (#11) at 7-8). However, the relief sought is appropriate according to the relevant statutes. Specifically, 47 U.S.C. §605(e)(3)(C)(i)(II) provides that, in the event of an unauthorized publication or use of communications, the party aggrieved is entitled to statutory damages in an amount of no more than $10,000, and 47 U.S.C. §605(e)(3)(C)(ii) provides that a willful violation permits a court to increase the award of damages by no more than $100,000. 47 U.S.C. §605(e)(3)(C)(i)(II) (West); 47 U.S.C. §605(e)(3)(C)(ii) (West). In addition, 47 U.S.C. §553(c)(3)(A)(ii) provides that, in the event of an unauthorized reception of cable service, the party aggrieved may recover statutory damages in an amount no more than $10,000, and 47 U.S.C. §553(c)(3)(B) provides that a willful violation justifies an enhancement by no more than $50,000. 47 U.S.C. §553(c)(3)(A)(ii) (West); 47 U.S.C. §553(c)(3)(B) (West). Given the

amended complaint's allegations of Defendant's unlawful interception and transmission of *Programs*, and the alleged willful nature of Defendant's misconduct, the amount of money at stake is commensurate to allegations.  (*See* Am. Compl. (#11) at 3-5).  However, Plaintiff can recover damages under either §605 or §553, but not both.[1]  Therefore, the damages will likely be reduced, should the Court find that damages are appropriate.  This factor weighs neither in favor nor against granting default judgment.

The fifth *Eitel* factor favors default judgment.  Given the sufficiency of the complaint and Defendant's default, and the assumption that all well-pleaded factual allegations in the complaint are true, there is no genuine dispute of material facts that would preclude granting Plaintiff's motion.  *Newcosmopolitanlasvegas.com*, at *2.

The sixth *Eitel* factor weighs in Plaintiff's favor as well because the Court cannot reasonably conclude that Defendant's default is due to excusable neglect.  Defendant was properly served with a copy of the amended complaint, by and through their counsel of record on November 21, 2012. (Mot. for Default Judg. (#18) at 1).  Defendant failed to file an appropriate answer by its December 11, 2012 deadline.  (*Id.*).  Therefore, Defendant's failure to respond cannot reasonably be due to excusable neglect.  *United States v. High Country Broadcasting Co., Inc.*, 3 F.3d 1244, 1245 (9th Cir. 1993) (finding that it was "perfectly appropriate" for the district court to enter default judgment against a corporation that failed to appear in the action through licensed counsel).

The final factor of the *Eitel* test weighs against granting default judgment.  "Cases should be decided upon their merits whenever reasonably possible."  *Eitel*, 782 F.2d at 1472.  But the mere existence of Rule 55(b) indicates that this preference, standing alone, is not dispositive.  *Newcosmopolitanlasvegas.com*, at *2.  Further, Defendant's failure to answer or otherwise respond to the amended complaint "makes a decision on the merits impractical, if not impossible."  *Id.*

---

[1] Please refer to discussion on pages 7-8.

Upon reviewing Plaintiff's motion and considering the *Eitel* factors as a whole, the Court concludes that the entry of default judgment is appropriate against Defendant. The Court now turns to the reasonableness of damages and relief sought in the default judgment.

Once the court clerk enters a default, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). The party seeking default judgment is required to prove all damages sought in the complaint, and those damages may not "differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c); *see also Fullmer v. Brown,* 2:09-CV-01442-RCJ-PAL, 2010 WL 3860650, at *1 (D. Nev. Sept. 28, 2010). If sufficiently documented and detailed, damages claims may be determined by an accounting, declarations, or affidavits submitted by a plaintiff. *Fullmer,* at *1. Otherwise, a court reserves the right to order a full evidentiary hearing. Fed. R. Civ. P. 55(b)(2); *Geddes*, 559 F.2d at 560.

**A. COUNT I**

Count I of Plaintiff's amended complaint alleged that Plaintiff is entitled to statutory damages for each willful violation against the Defendant pursuant to the Communications Act of 1934, as amended, 47 U.S.C. §605(e)(3)(C)(ii), as well as the recovery of full costs, including attorney's fees, pursuant to 47 U.S.C. §605(e)(3)(B)(iii). (Am. Compl. (#11) at 5, 7). The Act prohibits the unauthorized publication or use of communications. 47 U.S.C. §605 (West). Specifically, subsection (a) provides that "no person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." 47 U.S.C. §605(a) (West). Regarding damages, the party aggrieved may recover an award of statutory damages for each violation of subsection (a) in the amount of no less than $1,000 and no more than $10,000. 47 U.S.C. §605(e)(3)(C)(i)(II) (West). As an enhancement, if the violation was committed willfully or for financial gain, a court may increase the award of damages by no more than $100,000 for each violation. 47 U.S.C. §605(e)(3)(C)(ii) (West). Finally, the statute provides that an aggrieved party shall collect reasonable attorney's fees. 47 U.S.C. §605(e)(3)(B)(iii) (West).

The amended complaint alleged that Defendant willfully intercepted, received, published, divulged, displayed and/or exhibited *Programs* at the time of their transmission, with "full knowledge" that such behavior was prohibited. (Am. Compl. (#11) at 5). Further, the amended complaint alleged that these actions resulted in financial benefit on Defendant's part. (*Id.* at 3-5). Therefore, accepting the well-pleaded factual allegations as true, Plaintiff is entitled to $110,000 as the statutory maximum for Defendant's violation of 47 U.S.C. §605(a), pursuant to 47 U.S.C. §605(e)(3)(C)(i)(II) for a base of $10,000, and 47 U.S.C. §605(e)(3)(C)(ii) for an increase of $100,000. *See* 47 U.S.C. §605 (West).

However, the Court declines to award damages due to inconsistencies within the amended complaint and throughout the docket. In the amended complaint, Plaintiff prayed for $110,000 "for each violation [of 47 U.S.C. §605] against the Defendant."[2] (Am. Compl. (#11) at 7). The amended complaint asserts elsewhere that Plaintiff is entitled to only $100,000 pursuant to 47 U.S.C. §605. (*Id.* at 5). In addition, the damages recommended in the separately filed proposed default judgment against Defendant were inconsistent with those requested in Plaintiff's amended complaint. (*Compare* Prop. Default Judg. (#19), *with* Am. Compl. (#11) at 7-8). Plaintiff's proposed default judgment against Defendant suggests that the Defendant is liable to Plaintiff for a total of $65,000 for the violation of 47 U.S.C. §605, broken down as $55,500 for the violation of 47 U.S.C. §605(e)(3)(c)(i)(II), and $10,000 for the violation of 47 U.S.C. §605(e)(3)(c)(ii). (Prop. Default Judg. (#19) at 1). Given that those two bases for recovery are not valid references to the statute, combined with several inconsistencies in Plaintiff's requested relief, the Court declines to award statutory damages based on 47 U.S.C. §605 at this time. The Court grants Plaintiff 20 days from the date of this order to re-file a supplemental motion for default judgment that sets out the necessary proof to establish damages pursuant to Count I.

---

[2] Plaintiff's amended complaint did not specify whether Defendant's interception of the two separate telecasts on two different dates constituted two separate violations, but instead referred to the two telecasts as a combined "*Programs*." (Am. Compl. (#11) at 4). Given this term used to refer to the offenses, combined with the request for the statutory maximum of one offense, the Court assumes that Plaintiffs have joined Defendant's offenses into one violation for purposes of this suit. Accordingly, the Court would be inclined to find damages in the amount of $110,000 appropriate.

**B.  COUNT II**

Count II of the amended complaint alleged that Plaintiff is entitled to a total of $60,000 in statutory damages for Defendant's violation of 47 U.S.C. §553.  (Am. Compl. (#11) at 6-7).  The statute prohibits any person from intercepting any communications service offered over a cable system, unless specifically authorized to do so.  47 U.S.C. §553(a)(1) (West).  Pursuant to 47 U.S.C. §553, a party aggrieved may recover statutory damages for all violations in an amount no less than $250 and no more than $10,000.  47 U.S.C. §553(c)(3)(A)(ii) (West).  Further, the award may be increased by no more than $50,000 for willful violations or those committed for financial gain.  47 U.S.C. §553(c)(3)(B) (West).

While neither the Ninth Circuit nor the District of Nevada have directly addressed this issue, the Second Circuit Court of Appeals has explored Congressional intent and determined that even if a defendant has violated both §605 and §553, the aggrieved party cannot recover damages under both statutes.  *Int'l Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1009 (2d Cir. 1993).  Therefore, a court should grant damages under §605(e) instead of granting the lesser damages available under §553.  *Id.*  Taking the amended complaint's well-pleaded allegations as true, the Defendant is liable for willfully intercepting *Programs*, where Plaintiff had the exclusive private right to broadcast *Programs* pursuant to 47 U.S.C. §553.  (Am. Compl. (#11) at 5-6).  Therefore, Defendant is entitled to the statutory maximum of $60,000 for Defendant's willful violation.  Influenced by the persuasive precedent from the Second Circuit, this Court would be inclined to find that Plaintiff cannot recover under both Count I and Count II.

However, the question is moot at this time because another inconsistency exists between Plaintiff's amended complaint and the proposed default judgment.  (*Compare* Am. Compl. (#11) at 5-6, *with* Prop. Default Judg. (#19)).  The former prayed for $60,000 in statutory damages, while the latter included no mention of a violation of 47 U.S.C. §553, and no request for damages pursuant to the statute.  (*See* Prop. Default Judg. (#19)).  In light of the inconsistency, this Court denies damages pursuant to 47 U.S.C. §553 at this time, allowing Plaintiff 20 days from the date of this order to re-file a supplemental motion for default judgment that sets out the necessary proof to establish damages pursuant to Count II.

### C.  COUNT III

Count III of Plaintiff's amended complaint alleged that Defendant tortuously obtained possession of *Programs* and wrongfully converted the same for its own use and benefit.  (Am. Compl. (#11) at 6-7).

In Nevada, a conversion occurs whenever there is a serious interference to a party's rights in his property.  *Scaffidi v. United Nissan*, 425 F.Supp.2d 1159, 1168 (D. Nev. 2005).  Conversion is defined as an act of dominion "wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein or in derogation, exclusion, or defiance of such title or rights."  *Ferreira v. P.C.H. Inc.*, 774 P.2d 1041, 1043 (Nev. 1989).  Conversion does not require a manual taking, but can be an unjustified claim of title to personal property.  *Scaffidi*, 425 F.Supp.2d at 1168.  In the event of a conversion, the injured party is entitled to full compensation for his actual losses.  *Winchell v. Schiff*, 193 P.3d 946, 950-951 (Nev. 2008).  If the record reflects that the injured party suffered lost business as a result of the conversion, then the injured party is entitled to the value of lost business as compensation for actual losses.  *Id.* at 951.

Because Plaintiff has purchased the exclusive nationwide commercial distribution rights to *Programs*, and because Defendant has willfully intercepted *Programs*, the violation constitutes a conversion.  However, Plaintiff is required, as per the *Winchell* standard, to show proof of actual losses suffered.  Plaintiff provided no requested amount of relief in the amended complaint.  (*See generally* Am. Compl. (#11)).  It was only in the proposed default judgment that Plaintiff requested $4,400 in damages for conversion.  (Prop. Default Judg. (#19) at 1).  Plaintiff provides no affidavits to substantiate this amount.  (*See generally* Docket Sheet; *see also* Am. Compl. (#11)).  The amended complaint alleged only that Plaintiff "expended substantial monies marketing, advertising, promoting, administering, and transmitting the *Programs* to its customers."  (Am. Compl. (#11) at 4).  It further alleged that Plaintiff was deprived the commercial license fee to which Plaintiff was rightfully entitled and thereby subjected Plaintiff to "great financial loss."  (*Id.* at 7).  However, the Court will not base damages on such conclusory statements that lack evidentiary support.  *See Fitzsimmons v. Rickenbacker Fin., Inc.,*

2:11-CV-1315-JCM-PAL, 2012 WL 3994477, at *3 (D. Nev. Sept. 11, 2012) (holding that plaintiff's statement that she was actually harmed "based on frustration, and confusion…" did not warrant damages because it was conclusory).  Absent a proper request for relief and lack of proof, the Court denies all compensatory, exemplary and punitive damages pursuant to the conversion claim and permits Plaintiff 20 days from the date of this order to re-file a supplemental motion for default judgment that sets out the necessary proof to establish damages pursuant to Count III.

## II. ATTORNEY'S FEES AND COSTS

A plaintiff that prevails on a claim under 47 U.S.C. §605 or 47 U.S.C. §553 is entitled to reasonable attorney's fees and costs.  *See* 47 U.S.C. §605(e)(3)(B)(iii); *see also* 47 U.S.C. §553(c)(2)(C).  However, even if a statute entitles Plaintiff to damages, Plaintiff must still show proof of the relief requested pursuant to Fed. R. Civ. P. 54 and Local Rules 54-1 through 54-16.

A motion for attorney's fees and related nontaxable expenses must be filed no later than 14 days after the entry of judgment.  Fed. R. Civ. P. 54(d)(2)(B)(i).  The motion must state the amount sought or provide a fair estimate.  Fed. R. Civ. P. 54(d)(2)(B)(iii).  Local Rule 54-16(b) further requires that the motion include the following components:

(1) A reasonable itemization and description of the work performed;

(2) An itemization of all costs sought to be charged as part of the fee award and not otherwise taxable pursuant to LR 54-1 through 54-15;

(3) A brief summary of the following:

    A. The results obtained and the amount involved;

    B. The time and labor required;

    C. The novelty and difficulty of the questions involved;

    D. The skill requisite to perform the legal service properly;

    E. The preclusion of other employment by the attorney due to acceptance of the case;

    F. The customary fee;

    G. Whether the fee is fixed or contingent;

    H. The time limitations imposed by the client or the circumstances;

    I. The experience, reputation, and ability of the attorney(s);

    J. The undesirability of the case, if any;

    K. The nature and length of the professional relationship with the client;

    L. Awards in similar cases; and,

 (4) Such other information as the Court may direct.

 In addition, the motion for attorney's fees and costs must be accompanied by an affidavit from the attorney responsible for the billings in the case to authenticate the information contained in the motion, and to prove that the fees and costs sought are reasonable. LR 54-16(c). A failure to provide the documentation required by LR 54-16(b) and (c) in a motion for attorney's fees "constitutes a consent to the denial of the motion." LR 54-16(d).

 Here, Plaintiff seeks attorney's fees pursuant to 47 U.S.C. §605(e)(3)(B)(iii) and 47 U.S.C. §553(c)(2)(C). (*See* Am. Compl. (#11) at 5-6). While a recovery under 47 U.S.C. §605 would automatically entitle Plaintiff to recover attorney's fees, Plaintiff failed to file a motion for attorney's fees pursuant to Fed. R. Civ. P. 54(d)(2)(A). (*See generally* Docket Sheet). Although Plaintiff did file a proposed default judgment against Defendant, which included a proposal for attorney's fees totaling $1,200 (at the rate of four hours at $300 per hour), Plaintiff did not provide brief statements of the 12 factors outlined in LR 54-16(b)(3). (*See* Prop. Default Judg. (#19); *see generally* Docket Sheet). Further, Plaintiff filed no attorney affidavits to authenticate the amount requested in the proposed default judgment against Defendant, which justifies the denial of a motion for attorney's fees and costs. LR 54-16(d). Therefore, the Court denies Plaintiff's request for attorney's fees at this time. Plaintiff has 20 days from the date of this order to re-file a proper motion for attorney's fees and costs pursuant to Fed. R. Civ. P. 54 and Local Rules 54-1 through 54-16.

## CONCLUSION

 For the foregoing reasons, IT IS ORDERED that Plaintiff J&J Sports Productions, Inc.'s Motion for Entry of Default Judgment against Defendant Bonito Michoacan, Inc. Pursuant to Fed. R. Civ. P. 55(b)(2) (#18) is GRANTED in part and DENIED in part. The Court grants the

motion for a default judgment but denies the requested amount of damages at this time.  The Court directs Plaintiff to file a supplemental motion for default judgment within 20 days of this order that provides the necessary proof and documentation for damages.

    IT IS FURTHER ORDERED that Plaintiff has 20 days from the date of this order to file an appropriate motion for attorney's fees and costs in accordance with Fed. R. Civ. P. 54(d) and Nevada Local Rule 54-16.

Dated this 16th day of September, 2013.

_____
United States District Judge